IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: STEVEN BROWN and LINDA BROWN,     Debtors | : : : : : | CIVIL ACTION<br><br>NO. 13-6460 |
| BROWN, *et al.*,     Appellants | : : : | |
| v. | : : | (BANKRUPTCY NO. 12-14058) |
| FERRONI, *et al.*,     Appellees | : : : | |

### MEMORANDUM OPINION

**Savage, J.**                                                                                            February 24, 2014

The issue in this bankruptcy appeal, which has not been decided by the Third Circuit and has divided other courts, is whether the Bankruptcy Abuse and Prevention and Consumer Protection Act ("BAPCPA") abrogated the absolute priority rule in individual Chapter 11 cases. Stated differently for purposes of this case, the question is whether an individual Chapter 11 debtor must satisfy the absolute priority rule when an impaired unsecured creditor objects to the proposed reorganization plan.

The absolute priority rule, codified at 11 U.S.C. § 1129(b)(2)(B)(ii), provides that each class of unsecured creditors must be paid in full before the debtor can retain any property as part of a reorganization plan. *See Bank of America Nat'l Trust and Sav. Ass'n v. 203 North LaSalle P'ship*, 526 U.S. 434, 441-42 (1999). The provision was amended and a new section, § 1115, was added in 2005 by BAPCPA. It is the added language that has created the split among the courts that have interpreted the absolute priority rule in individual debtor Chapter 11 cases after BAPCPA was enacted. That

newly-added language is "except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under Section 1115, subject to the requirements of subsection (a)(14) of this section."  11 U.S.C. § 1129(b)(2)(B)(ii).

After a thorough, thoughtful and well-reasoned analysis, Bankruptcy Judge Bruce Fox held that the absolute priority rule's application in individual Chapter 11 cases was not affected by the 2005 amendments to the Bankruptcy Code.  After reviewing the bankruptcy court's legal determination *de novo*, *In re American Pad & Paper Co.*, 478 F.3d 546, 551 (3d Cir. 2007) (citing *In re United Healthcare Sys., Inc.*, 396 F.3d 247, 249 (3d Cir. 2005)), we agree.  Therefore, because the debtors acknowledge that they cannot present a plan that satisfies the absolute priority rule, we shall affirm the Bankruptcy Court's order dismissing the case.

## Facts

The facts and the procedural history are thoroughly detailed in the Bankruptcy Court's memorandum opinion.  *In re Brown*, 498 B.R. 486, 489-92 (Bankr. E.D. Pa. 2013).  On appeal, the relevant facts are not in dispute.

On April 25, 2012, the debtors, Steven and Linda Brown, filed a joint voluntary bankruptcy petition under Chapter 11 of the Bankruptcy Code.  Steven Brown, an architect, runs a construction and design business through three entities, Design Associates, Inc., Design Build, LLC, and Build US, LLC.  Linda Brown is a homemaker and a volunteer special education teacher.  The debtors proposed to reorganize using Steven Brown's income from his businesses.  *In re Brown*, 498 B.R. at 489.

On July 19, 2012, Mario Ferroni, one of the Browns' creditors, filed a motion to dismiss the case based on the debtors' failure to file a plan and/or show their ability to

reorganize.[1] On March 20, 2013, the Browns proposed a Chapter 11 plan, which was rejected on July 23, 2013. The following day, the Browns filed a second plan. The amended plan proposed that all allowed unsecured claims, including Ferroni's, be placed in class 6.[2] The debtors proposed to pay $15,000 per year to this class, to be distributed *pro rata*. The interests of the debtors were placed in class 7 of the proposed plan and provided for their treatment as follows:

> On the Effective Date and except as otherwise set forth in this Plan, the Reorganized Debtors shall be vested with all assets that comprise the Debtors' estates, free and clear of all Claims, liens, charges, encumbrances, rights and Interests of creditors and equity security holders. As of the Effective Date, the Reorganized Debtors may operate their business and use, acquire and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court free of any restrictions of the Bankruptcy Code other than as expressly set forth in the Plan or the Confirmation Order.

*In re Brown*, 498 B.R. at 491 (citing Ex. T-3, at 10 (¶ 7.1)). In short, the amended plan proposed that the Browns would retain all of their exempt and non-exempt assets, including Steven Brown's interest in his three businesses, while paying the unsecured creditors $75,000 over five years at the rate of $15,000 per year.

On August 15, 2013, at the hearing on Ferroni's motion to dismiss, the debtors acknowledged that Ferroni's unsecured claim of $489,000 would not and could not be paid in full. They also recognized that Ferroni would not vote in favor of the plan or any plan they could afford to fund. *Id.* at 491-92.

---

[1] Judge Fox noted that Ferroni confessed judgment against the debtors and began execution proceedings, which was the underlying reason for the Browns' bankruptcy petition. Ferroni executed upon the property and filed a deficiency claim in the amount of $489,000. *In re Brown*, 498 B.R. at 490.

[2] *Id.* at 491. The total amount of unsecured claims was approximately $561,174.20. Ferroni's claim was $489,000; TD Bank's claim was $50,000, and "other unsecured claims" totaled $22,174.20. *Id.* at 491 n.7. Under the proposed plan, Ferroni would be paid $65,354 or 13.4% of his claim.

A plan may not be confirmed unless, among other things, it is accepted by a majority of each class of claims that is impaired by the plan. 11 U.S.C. § 1129(a)(8)(A). To be accepted, a plan needs a favorable vote of at least two-thirds in dollar value of the claims of eligible votes cast in the class. *Id.* § 1126(c).[3] Because Ferroni's claim exceeds the one-third threshold, he holds a "blocking position" pursuant to § 1126(c),[4] that is, without his consent, the plan cannot be approved. Accordingly, it is undisputed that without Ferroni's acquiescence, the proposed plan cannot be confirmed.

Ferroni objected to the amended plan, arguing that the Browns' plan violated the absolute priority rule.[5] The Browns countered that the rule was abrogated by the 2005 amendments to the Bankruptcy Code.[6] At the same time, they conceded that if the rule was not abrogated, their plan could not be confirmed.[7]

On September 26, 2013, Judge Fox entered an order dismissing the case because the absolute priority rule stood in the way of confirmation.[8] The Browns timely appealed.

On appeal, the Browns argue that we should adopt the "admittedly, minority" position and hold that the absolute priority rule, as amended by BAPCPA, allows

---

[3] A class accepts the plan if it receives a favorable vote of:
1) more than one half of the total number of eligible votes cast in the class; and
2) at least two-thirds in dollar value of the claims of eligible votes cast in the class.
11 U.S.C. § 1126.

[4] 498 B.R. at 492.

[5] 12-BR-14058, 08/15/2013 Hr'g Tr. on Mot. to Dismiss 174:19-24; Objections of Creditor, Mario Ferroni, to Confirmation of Debtors' First Plan for Reorganization and Mot. to Dismiss the Bankruptcy, at 7, 12-BR-14058 (Doc. No. 155); Mem. in Supp. of Ferroni's Mot. to Dismiss the Bankruptcy, at 16-23, 12-BR-14058 (Doc. No. 188).

[6] 12-BR-14058, 08/15/2013 Hr'g Tr. on Mot. to Dismiss 191:18-192:1.

[7] *Id.* at 192:2-12.

[8] 09/26/2013 Order, 12-BR-14058 (Doc. No. 199).

individual debtors to retain pre-petition property over creditor objections.[9]  In response, Ferroni argues that the plan cannot be confirmed because it is not fair and equitable to the creditors as required under § 1129(b)(2)(B)(ii).[10]  Ferroni points out that the three circuit courts of appeal that have considered the issue have held that the BAPCPA amendments did not abrogate the absolute priority rule in individual debtor cases.[11]

## Discussion

Before a plan of reorganization in a Chapter 11 case can be confirmed, it must meet the requirements set forth in 11 U.S.C. § 1129(a).  One of the requirements is that the plan must be acceptable to each impaired class of creditors.  11 U.S.C. § 1129(a)(8)(A).  Notwithstanding this creditor-acceptance requirement, the plan can be "crammed down" over the objections of impaired creditors if it is non-discriminatory and "fair and equitable" to the dissenting unsecured creditors.  *Id.* § 1129(b)(1).  A plan is fair and equitable when it provides either that each unsecured creditor's allowed claim will be satisfied in full, or each dissenting unsecured creditor will be paid in full before the debtor receives or retains property.  *Bank of America*, 526 U.S. at 441-42 (citing § 1129(b)(2)(B)(i) and (ii)).

The end result of the application of the rule is that if all dissenting creditors are paid in full, the debtor can retain or receive property.  If they are not paid in full, the debtor cannot retain or receive property that is part of the estate over the objections of dissenting creditors.

---

[9] Appellants' Opening Br., at 8 (Doc. No. 4).

[10] Appellee's Br., at 3 (Doc. No. 7).

[11] *Id.* at 5.

The Browns realize that their plan cannot satisfy § 1129(a)(8) because Ferroni will not accept it. Consequently, it can be confirmed only if it is "crammed down" under § 1129(b)(1). Because the Browns' plan does not contemplate payment of unsecured creditors in full, § 1129(b)(2)(B)(ii), the section codifying the absolute priority rule, comes into play.

Prior to 2005, there was no question that the absolute priority rule applied to an individual debtor in a Chapter 11 case. As a result of BAPCPA, there is a disagreement whether it still applies.

In 2005, when Congress enacted BAPCPA, it amended § 1129(b)(2)(B)(ii) by adding language that has engendered the split among courts regarding the continuing viability of the absolute priority rule in individual Chapter 11 debtor cases. That section now provides as follows:

> the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, *except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14) of this section.*

11 U.S.C. § 1129(b)(2)(B)(ii) (2005 amendment language italicized).

Section 1115, a new section added by BAPCPA and referenced in the added language of § 1129(b)(2)(B)(ii), has contributed to the disagreement among the courts as to what property Congress contemplated as comprising the estate for purposes of applying § 1129(b)(2)(B)(ii). Section 1115 provides:

> (a) In a case in which the debtor is an individual, property of the estate includes, in addition to the property specified in section 541 –
>
> > (1) all property of the kind specified in section 541 that the debtor acquires after the commencement of the case but before the case

> is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first; and
>
> (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first.
>
> (b) Except as provided in section 1104 or a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate.

11 U.S.C. § 1115.

There is a split of authority as to the effect of the BAPCPA amendments on the absolute priority rule in individual Chapter 11 cases. Courts subscribing to the "narrow view" hold that only property and earnings acquired post-petition are excluded from the fair and equitable calculus, leaving the absolute priority rule intact. *See, e.g.*, *In re Maharaj*, 681 F.3d 558 (4th Cir. 2012). According to these courts, BAPCPA did not abrogate the absolute priority rule but merely amended it to allow individual Chapter 11 debtors to retain property and earnings acquired post-petition, that is, property that was excluded by § 541. *See* 11 U.S.C. § 541(a)(6) (carving out post-petition earnings from services performed by an individual debtor after the commencement of the case) and § 541(a)(7) (making property of the estate any interest in property that the estate, not the debtor, acquires after the case); *see also In re Maharaj*, 681 F.3d at 563. In other words, the newly-added § 1115 modified § 541's definition of estate property for individual debtors, operating to exclude only post-petition property from the absolute priority rule.

Courts endorsing the "broad view" conclude that the absolute priority rule in individual Chapter 11 cases was abrogated by the 2005 amendments, allowing debtors

7

to retain or receive all property, both pre-petition and post-petition, without satisfying the claims of dissenting creditors in full. *See, e.g., In re Friedman*, 466 B.R. 471 (B.A.P. 9th Cir. 2012). They reason that by including in § 1129(b)(2)(B)(ii) a cross-reference to § 1115, which in turn references § 541, the provision defining the property of a bankruptcy estate, Congress intended to allow the individual debtor to retain all exempt and non-exempt property as part of a confirmation plan.

Three circuit courts and seventeen bankruptcy courts have adopted the narrow view.[12] On the other side of the issue, one bankruptcy appellate panel, one district court and seven bankruptcy courts have adopted the broad view.[13]

---

[12] *See In re Maharaj*, 681 F.3d 558 (4th Cir. 2012) (affirming the bankruptcy court's decision in 449 B.R. 484 (Bankr. E.D. Va. 2011)); *In re Stephens*, 704 F.3d 1279, 1284 (10th Cir. 2013); *In re Lively*, 717 F.3d 406, 409-10 (5th Cir. 2013); *In re Gerard*, 495 B.R. 850 (Bankr. E.D. Wis. 2013); *In re Grasso*, 497 B.R. 448, 461 n.13 (Bankr. E.D. Pa. 2013); *In re Martin*, 497 B.R. 349 (Bankr. M.D. Fla. 2013); *In re Lively*, 467 B.R. 884, 892-93 (Bankr. S.D. Tex. 2012); *In re Arnold*, 471 B.R. 578, 587-88 (Bankr. C.D. Cal. 2012); *In re Lee Min Ho Chen*, 482 B.R. 473 (Bankr. D.P.R. 2012); *In re Stephens*, 445 B.R. 816, 820-21 (Bankr. S.D. Tex. 2011) (if § 1115 were interpreted to include all property of the estate, the language "in addition to the property specified in section 541" in the preamble to § 1115(a) would render the words "all property of the kind specified in section 541" in § 1115(a)(1) surplusage; also, the broad interpretation would render section 541 itself surplusage); *In re Walsh*, 447 B.R. 45, 47-49 (Bankr. D. Mass. 2011) ("because it deals with postpetition section 541(a) property (a most awkward construction), section 1115 does not include section 541(a) property as such"); *In re Draiman*, 450 B.R. 777, 820-22 (Bankr. N.D. Ill. 2011) (court's "plain reading" of § 1115 was that it added property to the debtor's estate which had already been established by § 541 and that § 1115 did not absorb § 541, even though "it is generally true that the changes instituted by BAPCPA intended for individual Chapter 11 cases to more closely track Chapter 13 cases"); *In re Kamell*, 451 B.R. 505, 507-12 (Bankr. C.D. Cal. 2011) (no clear expression of Congressional intent to abrogate the absolute priority rule; the argument that Congress intended to treat individuals in Chapter 11 more like debtors in Chapter 13 was "rather convoluted and strained" particularly since the overall thrust of BAPCPA was punitive in nature); *In re Lindsey*, 453 B.R. 886 (Bankr. E.D. Tenn. 2011); *In re Borton*, 09-BR-00196, 2011 WL 5439285, at *4 (Bankr. D. Idaho Nov. 9, 2011); *In re Gbadebo*, 431 B.R. 222, 227-30 (Bankr. N.D. Cal. 2010) (court found the statutory language to be unambiguous; "included in the estate under section 1115" meant "added" to the estate by § 1115; BAPCPA amendments to make Chapter 11 more like Chapter 13 not "persuasive evidence"; BAPCPA not "designed to enhance the individual debtor's 'fresh start'"); *In re Mullins*, 435 B.R. 352, 359-61 (Bankr. W.D. Va. 2010) (statute not ambiguous; broad view "strained to find ambiguity"; had Congress intended to entirely eliminate absolute priority rule from individual Chapter 11 cases, there were clearer, easier and more direct ways to do it); *In re Gelin*, 437 B.R. 435, 440-43 (Bankr. M.D. Fla. 2010) (broad view was plausible given text's unquestionable ambiguity; since neither § 103(a) nor § 541 was amended by BAPCPA, "there is no reason for section 1115 to 'absorb' and 'supersede' § 541 to define property of the estate"; broad view was "an incredibly complicated and forced interpretation"; had Congress meant to exempt an individual debtor's entire estate, it would have referred to both § 541 and § 1115 in § 1129(b)(2)(B)(ii)); *In re Karlovich*, 456 B.R. 677, 679-82 (Bankr. S.D. Cal. 2010) (statutory language unambiguous; had Congress intended to abrogate the absolute priority rule for individuals, it "could easily

Courts and commentators interpreting the statute broadly have reached that point by different paths. Some have held that a plain reading of the statute produces that result. Others, finding the statutory language ambiguous, rely on their view of the legislative history to conclude that the similarity of BAPCPA amendments to the existing Chapter 13 provisions suggests that Congress intended to conform the procedures in Chapters 11 and 13. *In re Roedemeier*, 374 B.R. 264, 275-76 (Bankr. D. Kan. 2007). In other words, so they conclude, because BAPCPA made changes that imposed many Chapter 13-like requirements on individual Chapter 11 debtors and Chapter 13 does not include an absolute priority rule, Congress must have intended to abrogate the absolute priority rule in individual Chapter 11 cases. *Id.* at 276.

---

have added 'except with respect to individuals' at the beginning of § 1129(b)(2)(B)(ii), or stated that an individual could retain all property"; had Congress intended to make individual Chapter 11 cases more like Chapter 13 cases, Congress could have raised or eliminated the statutory debt ceilings for Chapter 13 cases); *In re Steedley*, 09-BR-50654, 2010 WL 3528599, at *2-3 (Bankr. S.D. Ga. Aug. 27, 2010) (statutory language unambiguous; plain language of § 1115 does not subsume § 541; to the contrary, § 541 specifically applies in all Chapter 11 cases and § 1115 adds postpetition property to the individual debtor's estate); *In re Friedman*, 466 B.R. 471, 484-92 (B.A.P. 9th Cir. 2012) (Jury, J., dissenting).

[13] *See In re Friedman*, 466 B.R. 471 (B.A.P. 9th Cir. 2012) (language not ambiguous and within the contextual statutory scheme and logic of plan confirmation requirements; "included" is not a word of limitation; plain reading of § 1129(b)(2)(B)(ii), and § 1115 together mandates that absolute priority rule is not applicable; Chapter 13 does not contain an absolute priority rule; BAPCPA amendments adopted provisions to individual Chapter 11s, which are similar, if not identical, to Chapter 13); *In re O'Neal*, 490 B.R. 837 (Bankr. W.D. Ark. 2013); *In re Tucker*, 479 B.R. 873 (Bankr. D. Or. 2012) (vacating its prior order denying confirmation of the reorganization plan in light of intervening B.A.P. decision in *In re Friedman*, 466 B.R. 471); *SPCP Group, LLC v. Biggins*, 465 B.R. 316, 320-23 (M.D. Fla. 2011) (affirming an unpublished bankruptcy court decision that broad interpretation applied, based upon the plain meaning of the statute, thus allowing the debtors to retain prepetition property, despite contrary holding from another bankruptcy court in the same district – *In re Gelin,* 437 B.R. 435); *In re Shat*, 424 B.R. 854, 862-68 (Bankr. D. Nev. 2010) (narrow view "underscored by other changes made at the same time" to make individual Chapter 11 cases more like Chapter 13 cases); *In re Johnson*, 402 B.R. 851, 852-53 (Bankr. N.D. Ind. 2009) (dicta that individual Chapter 11 debtor's plan need not satisfy the absolute priority rule of 11 U.S.C. § 1129(b)(2)(B)(ii)); *In re Bullard*, 358 B.R. 541, 544 (Bankr. D. Conn. 2007); *In re Tegeder*, 369 B.R. 477, 479-81 (Bankr. D. Neb. 2007) (court acknowledged absence of reported decisions, relied upon treatises and commentators, and found the statutory language unambiguous); *In re Roedemeier*, 374 B.R. 264, 273-76 & nn. 16-19 (Bankr. D. Kan. 2007) (relying upon treatises and commentators, court noted that the changes made to make individual Chapter 11 cases function more like Chapter 13 cases indicated Congress intended to extend exemption to individual Chapter 11 debtors).

Narrow view courts reject this approach, reasoning that "[j]ust because Chapter 13 does not have the absolute priority rule is not alone sufficient to justify the rather tortured reading of §§ 1129(b)(2)(B)(ii) and 1115 . . . ." *In re Kamell*, 451 B.R. at 505 (Bankr. C.D. Cal. 2011). According to some narrow view courts, it is "far more likely" that the purpose of the new language in § 1129(b)(2)(B)(ii) was to make the absolute priority rule the same for individual and non-individual Chapter 11 debtors as it was prior to BAPCPA. *See In re Karlovich*, 456 B.R. 677, 681 (Bankr. S.D. Cal. 2010); *In re Tucker*, 10-BR-67281, 2011 WL 5926757, at *2 (Bankr. D. Or. Nov. 28, 2011) (adopting the *Karlovich* reasoning and holding) (vacated in light of subsequent B.A.P. decision in *In re Friedman*, 466 B.R. 471). These courts reason that prior to BAPCPA, the estate did not include post-petition acquired property and earnings for individual and non-individual debtors alike. Consequently, a Chapter 11 debtor, individual or non-individual, could retain post-petition acquired property and earnings without violating the absolute priority rule. Section 1115 added post-petition acquired property and earnings to the individual debtor's estate. Without the corresponding change to § 1129(b)(2)(B)(ii), an individual debtor would no longer be able to retain post-petition acquired property and earnings if the plan was "crammed-down," but non-individual debtors would. The narrow view courts posit that language exempting § 1115 property from the absolute priority rule of § 1129(b)(2)(B)(ii) was necessary to ensure that the absolute priority rule would be applied equally to all Chapter 11 debtors.

### Analysis

In interpreting a statute, we start with the plain language of the statute. *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009). If the language is clear and unambiguous,

the inquiry is complete. *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) (citing *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.*, 530 U.S. 1, 6 (2000)); see also *In re Price*, 370 F.3d 362, 368 (3d Cir. 2004). In that case, there is no need to resort to legislative history or any other extrinsic material. *Parker v. NutriSystem, Inc.*, 620 F.3d 274, 277 (3d Cir. 2010). On the other hand, where the language is ambiguous, we must ascertain the intent of Congress by examining the statutory purpose and legislative history. *Id.* at 278.

In determining whether language is ambiguous, we "read the statute in its ordinary and natural sense." *In re Harvard Indus., Inc. v. IRS*, 568 F.3d 444, 451 (3d Cir. 2009) (citation omitted). A provision is ambiguous when there is a reasonable disagreement as to its meaning. *Dobrek v. Phelan*, 419 F.3d 259, 264 (3d Cir. 2005). However, because courts interpret a statute differently does not create an ambiguity. *In re Friedman's Inc.*, 738 F.3d 547, 554 (3d Cir. 2013). If after assessing the language in the context of the statutory scheme a plain reading is not clear, it is ambiguous. *Id.* (citing *In re Price*, 370 F.3d at 369). In that instance, we may consult extrinsic sources, including the statute's legislative history. *Id.*

The language of § 1115 is not ambiguous. Reading the words "includes, in addition to" together means that what follows (post-petition earnings and property) is included in the definition of the property of the estate as defined in § 541. The provision makes clear that property that otherwise would be excluded under § 541(a)(6) and (7) is now included.[14] The phrase "included in the estate under section 1115," in turn, refers only to the property that was added to the bankruptcy estate by § 1115.

---

[14] Prior to BAPCPA, post-petition earnings and property acquired after the commencement of the case were specifically not included in the estate. 11 U.S.C. § 541(a)(6) and (7).

11

Even if the language of § 1115 were ambiguous and subject to two reasonable interpretations – one that allows debtors to keep all property of the estate, both pre-petition and post-petition; and one that allows debtors to retain only post-petition property, we would conclude that the absolute priority rule still applies in individual Chapter 11 debtor cases. If the language were ambiguous, we would discern Congress's intent by examining extrinsic evidence, including pre-BAPCPA practice, policy and the legislative history. *See In re Price*, 370 F.3d at 369.

Looking to the legislative history sheds no light on Congressional intent. The legislative history is silent as to whether Congress intended to exempt individual Chapter 11 debtors from the absolute priority rule. *See In re Draiman*, 450 B.R. 777, 821 (Bankr. N.D. Ill. 2011); *see also In re Shat*, 424 B.R. 854, 859-61 (Bankr. D. Nev. 2010) (tracing legislative history of individual debtor amendments to Chapter 11). The House Judiciary Committee Report simply reiterated the statutory language without providing any guidance as to what it was intended to mean. H.R. Rep. No. 109-31(I), at 80 (2005), reprinted in 2005 U.S.C.C.A.N. 88 at 147.

Because the legislative history offers no clue as to what Congress intended, we read the statute in the context of the Bankruptcy Code. *In re Friedman's*, 738 F.3d at 554. We also consider Congressional policy aims in enacting BAPCPA. *In re Friedman's*, 738 F.3d at 554; *Elliot Coal Min. Co., Inc. v. Director, Office of Workers' Compensation Programs*, 17 F.3d 616, 631 (3d Cir. 1994).

Reading the amended language of § 1129(b)(2)(B)(ii) in the context of the statute as a whole rather than in isolation, *In re Friedman's*, 738 F.3d at 554, the more sensible interpretation is that Congress did not intend to abrogate the absolute priority rule. If

Congress meant to exempt an individual debtor's entire estate, it would have referred to both §§ 541 and 1115 in § 1129(b)(2)(B)(ii). It did not. The phrase "included in the estate under section 1115" refers only to the post-petition property added to the estate under § 1115. It does not supplant the definition of estate property in § 541.

Significantly, § 541 is aimed at including as much property as possible in the bankruptcy estate. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204-05 (1983) ("Congress intended a broad range of property to be included in the estate."). It includes in the bankruptcy estate, with some limited exceptions, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). In contrast, the wording of § 1115 is more limited and is only meant to "include[]" post-petition property and earnings within the ambit of the individual Chapter 11 debtor estate.

Bankruptcy Judge Fox summarized the reasoning that supports adoption of the narrow view. He wrote:

> Indeed, section 321 of BAPCPA, P.L. No. 109-8, which both added section 1115 and amended section 1129(b)(2)(B)(ii), as well as its legislative history, by addressing the new provisions in sections 1115 and 1129 in tandem, implies that Congress amended section 1129(b)(2)(B)(ii) in order to preserve the absolute priority rule as it applied to individual debtors prior to the 2005 Bankruptcy Code amendments. That is, the addition of postpetition assets and earnings to the definition of estate property in individual cases by section 1115(a) triggered the amendment to section 1129(b)(2)(B)(ii), so as not to further expand the scope of the absolute priority rule into postpetition property.

*In re Brown*, 498 B.R at 504-05.

Interpreting § 1115 broadly would render other language in the Code superfluous. For example, "[t]he language 'in addition to the property specified in section 541' in the preamble to section 1115(a) would render [as] surplusage the words

13

'all property of the kind specified in section 541' in section 1115(a)(1), if § 1115 is interpreted to include all property of the estate." *In re Stephens*, 445 B.R. 816, 820-21 (Bankr. S.D. Tex. 2011). Additionally, § 103(a) would be unnecessary. Section 103(a) makes § 541, which defines property of the estate, applicable to all individual and non-individual Chapter 11 cases. If § 1115 is interpreted as replacing § 541, the language of § 103(a) making chapter 5 applicable in cases under chapter 11 would be meaningless, at least, in individual debtor cases. Significantly, BAPCPA made no changes to § 103(a) or § 541. Accordingly, we do not conclude, as the broad view courts have, that § 1115, which only addresses individual debtors, "absorbed" and "superseded" § 541.

Broadly-interpreting § 1129(b)(2)(B)(ii) would also render § 1129(b)(2)(B)(i), meaningless.[15] If Congress abrogated the absolute priority rule and allowed the individual debtor to keep both his pre-petition and post-petition property, a debtor could ignore the full payment option of § 1129(b)(2)(B)(i). Instead, he could opt to partially pay his dissenting creditors while retaining his pre-petition property. Such a result, as we shall see, would be inconsistent with the Congressional goal of curbing debtor abuse of the bankruptcy system.

In the absence of clear Congressional expression of intent, broad view courts have rested their decisions on what they see as implied repeal of the absolute priority

---

[15] (B) With respect to a class of unsecured claims--
    (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; **or**

    (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14) of this section.
11 U.S.C. § 1129(b)(2)(B)(i) and (ii) (emphasis added).

rule. *See In re Roedemeier*, 374 B.R. at 276. Indeed, if the language is ambiguous and the legislative history is silent, the only way to support the broad reading is by finding that the rule was implicitly repealed.

Repeal by implication, a strongly disfavored doctrine, exists only where the legislature's intent to repeal is "clear and manifest." *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662 (2007). This principle is especially applicable in the bankruptcy context because parties guide their business conduct in reliance on established rules. *See In re Maharaj*, 681 F.3d at 579.

There is nothing in the statutory language or in the legislative history expressing or even hinting that Congress intended to repeal the absolute priority rule. Furthermore, applying the broad view would also upset long-established bankruptcy practice and run counter to the policy aims of the BAPCPA.

The absence of any clear expression of Congressional intent to abrogate the absolute priority rule in light of its long history supports the view that Congress did not intend to abolish the rule. In *Hamilton*, the Supreme Court, in interpreting another BAPCPA amendment, stated that it will "not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure." *Hamilton v. Lanning*, 560 U.S. 505, 517 (citation omitted). The Fourth Circuit, in *Maharaj*, observed that the concept that the rights of the owners of property are subordinate to the rights of the creditors, as embodied in the absolute priority rule, has been a fundamental part of bankruptcy jurisprudence for over 100 years. *In re Maharaj*, 681 F.3d at 571-72. Abolishing the absolute priority rule would be a significant departure from pre-BAPCPA bankruptcy practice. *Id.* at 572.

Not only is there no clear and unequivocal expression of Congressional intent to repeal the absolute priority rule from which one could conclude that Congress intended to overturn such a significant pre-existing practice, there is no mention of the absolute priority rule in the legislative history of BAPCPA.  Congress is presumed to have been aware of the courts' interpretation of the rule and its significance.  *Matter of Snyder*, 967 F.2d 1126, 1129 (7th Cir. 1992) (citing *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 501 (1986)).  That Congress did not express its intent to eliminate the absolute priority rule in § 1129(b)(2)(B)(ii) for individual debtors militates against finding that it did so by implication.  Thus, given the rule's history and its importance, and Congress's lack of explicit expression of its intent to repeal the rule, we conclude that the BAPCPA amendments did not abrogate the absolute priority rule in individual Chapter 11 cases.

Preservation of the absolute priority rule is also consistent with Congress's express goal of curbing abuses of the bankruptcy system when it enacted BAPCPA.[16]  As the Supreme Court has observed, "Congress enacted [BAPCPA] to correct perceived abuses of the bankruptcy system."  *Ransom v. FIA Card Servs.*, 131 S.Ct. 716, 721 (2011) (quoting *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S.

---

[16] H.R. Rep. 109-31(I), at 2, reprinted in 2005 U.S.C.C.A.N. at 88-89 ("[T]he 'Bankruptcy Abuse Prevention and Consumer Protection Act of 2005,' is a comprehensive package of reform measures pertaining to both consumer and business bankruptcy cases. The purpose of the bill is to improve bankruptcy law and practice by restoring personal responsibility and integrity in the bankruptcy system and ensure that the system is fair for both debtors and creditors. With respect to the interests of creditors, the proposed reforms respond to many of the factors contributing to the increase in consumer bankruptcy filings, such as lack of personal financial accountability, the proliferation of serial filings, and the absence of effective oversight to eliminate abuse in the system. The heart of the bill's consumer bankruptcy reforms consists of the implementation of an income/expense screening mechanism ('needs-based bankruptcy relief' or 'means testing'), which is intended to ensure that debtors repay creditors the maximum they can afford. S. 256 also establishes new eligibility standards for consumer bankruptcy relief and includes provisions intended to deter serial and abusive bankruptcy filings. It substantially augments the responsibilities of those charged with administering consumer bankruptcy cases as well as those who counsel debtors with respect to obtaining such relief.") (footnote omitted).

229, 231-32 (2010)). The legislative history also suggests that a key Congressional purpose in passing BAPCPA was to curb the abusive practices of some unscrupulous debtors and to ensure debtors who could afford to pay creditors would do so to the maximum extent feasible. H.R. Rep. 109-31(I), at 1-2, reprinted in 2005 U.S.C.C.A.N. at 88-89; *In re Stephens*, 704 F.3d 1279, 1286 (10th Cir. 2013) (citing *In re Gbadebo*, 431 B.R. 222, 229 (Bankr. N.D. Cal. 2010)). As noted by several courts, the new provisions are designed to impose greater burdens on individual debtors' rights so as to ensure greater payout to creditors. *See, e.g.*, *In re Gbadebo*, 431 B.R. at 229.

Doing away with the absolute priority rule in individual Chapter 11 debtor cases would frustrate the BAPCPA goal of curbing abusive debtor practices. Without the rule, creditors would be at the mercy of debtors who could retain substantial assets over the objection of their creditors who would be paid pennies on the dollar. *See In re Friedman*, 466 B.R. at 485 (Jury, J. dissenting) ("[T]he policy behind the enactment of BAPCPA was to enhance the return to creditors."); *In re Arnold*, 471 B.R. 578, 609 (Bankr. C.D. Cal. 2012) ("[B]ased on this legislative history, it is incongruous to conclude that Congress intended to relax plan confirmation standards for individual Chapter 11 debtors by removing the creditor protection of the absolute priority rule and thereby allowing these debtors to retain their prepetition assets and cram down unsecured creditors."); *In re Kamell*, 451 B.R. at 508 ("[I]n general, BAPCPA has been read to tighten, not loosen, the ability of debtors to avoid paying what can reasonably be paid on account of debt."); *In re Gbadebo*, 431 B.R. at 229 ("Each one of these new provisions appears designed to impose greater burdens on individual chapter 11 debtor's rights so as to ensure a greater payout to creditors.").

**Conclusion**

The absolute priority rule has not been abrogated in individual Chapter 11 cases. Because the Browns cannot propose a plan that does not violate the absolute priority rule, they cannot satisfy the cram-down requirements of 11 U.S.C. § 1129(b)(2)(B)(ii). Therefore, the bankruptcy court's decision dismissing the case will be affirmed.